PER CURIAM.
The Madison County Department of Human Resources (department) filed petitions to terminate the parental rights of M.K.L.F. (mother) and M.L.D. (father) to B.L.F. and M.L.F., Jr. (children). After an ore tenus proceeding, the trial court terminated the parental rights of the mother, the father, and the mother’s husband and granted permanent legal custody to the department, authorizing it to proceed with plans for adoptive placement of the children. Both the mother and the father appeal, and the cases have been consolidated for purposes of this appeal. We affirm.
The mother contends that the trial court erred in its decision to terminate parental rights. The father contends that there were viable, less drastic alternatives to termination of parental rights.
At the outset we note that when evidence in a proceeding to terminate parental rights is presented ore tenus, the resulting judgment will be afforded every favorable presumption and will not be disturbed on appeal without the presence of palpable error. Hudgins v. State, 418 So.2d 913 (Ala.Civ.App.1982). It has previously been determined that the termination of parental rights demands clear and convincing evidence that termination would be in the child's best interests. Muffoletto v. State Dept. of Human Resources, 537 So.2d 939 (Ala.Civ.App.1988). In addition, this court must apply a two-prong test in cases in which termination is sought by a nonparent. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The trial court must first find that the child is dependent and then determine that all viable alternatives to termination have been considered, Muffoletto, 537 So.2d 939, and rejected. Beasley, 564 So.2d 950.
The record reveals that the mother and the father are the natural parents of the children. The legal father of the children, the mother’s husband, (husband) is M.J.F., whose whereabouts are unknown and who is a fugitive from justice. The department has provided services to the mother and the father since September 1988 and has had temporary legal custody of the children since October 1988.
There was testimony that the mother, the father, and the mother’s grandmother were evicted because of failure to pay rent and that they had moved numerous times after very short stays in rental housing. There was also testimony that the condition in which they had left one apartment was a “disaster” with garbage and liquor bottles all over the floor, handprints on the walls, moldy food, and filthy carpets.
*493 A third or fourth cousin of the mother testified that she began babysitting for B.L.F. two days after she was born. At first the mother would pick up the child for a few hours each day and then return her to the cousin. Then there were days when the mother would only phone or just drop by. The time periods with no contact increased. The cousin was never paid for keeping the child. She kept the child until the child was eighteen months old, at which time the department was granted temporary legal custody. The cousin continued to keep the child as a foster parent.
The cousin further testified that during the first eighteen months that she kept the child, the time that the mother and the father saw the child totalled approximately three or four weeks and that the longest consecutive period of time that they kept her was one week. There was also a period of four and one-half months during which neither the mother nor the father called or saw the child. They gave the cousin $2 for milk and a couple of bags of diapers during the time that she kept the child. After the department became involved, the mother came by her house about six or seven times, and the father came twice.
The children are presently with the cousin and her husband, who are now their foster parents, and they call the cousin “mama.” At the time of the hearing, B.L.F. had been in their home a total of three and one-half years, and M.L.F., Jr., had been there for twenty-two months.
The mother and the father have two other younger children, one that has been adopted by another couple and one that lives with them. The mother has another older child, who is apparently with his father, the mother’s present husband, whose whereabouts are unknown.
The department became involved with the family when they were notified that M.L.F., Jr., was not being brought in for medical appointments. A caseworker for the department located the mother and the child at the home of the mother’s grandmother and testified that they were living with the grandmother, who was sixty-eight years old. The caseworker had a problem determining where the mother and the father were living; the mother and the father had approximately five changes of address in a four-month period.
When the caseworker continued to receive reports of medical problems of M.L.F., Jr., and determined that he was not receiving medical attention, petitions were filed by the department, and pick-up orders were issued.
The mother started taking GED classes, but dropped out of the program. She stated that she had worked intermittently, but the caseworker was unable to verify her employment. The caseworker told the mother that in order to get her children back she needed to have steady employment and adequate income, to maintain regular visits, and to remain stable for six months. Remaining stable meant maintaining stable housing and paying the rent and other bills. The caseworker was never able to determine that housing was stable.
Although the father maintained that he was continually employed as a brick mason, and the mother claimed to work intermittently, neither parent complied with a court order to pay child support. At the request of the mother, visits were scheduled every two weeks at the department rather than at the cousin’s home, and the mother attended regularly. The father attended infrequently.
The mother was given the assistance of the “family options program” with regard to her youngest child, who is not the subject of this proceeding. Through this program workers came into her home everyday for five weeks to discuss parenting skills and anything that she needed to discuss. There has continued to be some concern over this child’s care and lack of medical attention.
The caseworker testified that efforts to rehabilitate the mother and the father have not been successful and that the mother and the father made no efforts to adjust their circumstances to meet the children’s needs.
*494 The caseworker further testified that she had checked into relative resources for alternative placement for the children. The department considered the paternal grandmother as a resource, but she would not cooperate with a home study and never contacted the department. No one else had expressed an interest in the children while they were in foster care. The caseworker also testified that the husband had never visited either of the children or provided any support for them.
The mother and the father testified that the cousin did not tell the truth when she stated that she kept the children full-time and that she did not hear from the mother and the father for four months. The mother testified that B.L.F. spent three or four days of every week with her during the first eighteen months of her life and that the cousin wanted to keep the children herself. Although the testimony was contradictory regarding the time that the children spent with the cousin, testimony from two additional witnesses indicated that almost every time that they were in the cousin’s home during the first eighteen months of B.L.F.’s life, the child was there.
The mother further testified that she quit parenting classes because she did not feel like going there and because she already knew what they were teaching. She also testified that she had never seen her grandmother drunk, although there had been other testimony that her grandmother had been drunk when she had one of the children. The father testified that he presently lived with the paternal grandmother in a one-bedroom apartment and that the mother lived with her grandmother in a two-bedroom apartment.
The paternal grandmother stated that she would be willing to take temporary custody of the children and would assist the mother and the father in caring for them. She lives in a one-bedroom apartment, but has been trying to buy a three-bedroom trailer. She works at night and sleeps during the day.
The order of the trial court, which was an adoption of the order of the referee who heard the testimony, found (1) that the husband had abandoned the children; (2) that the father, the mother, and the husband are unwilling or unable to discharge their responsibilities to and for the children; (3) that their conduct or condition has rendered them unable to properly care for the children, a condition which is unlikely to change in the near future; (4) that they have failed to provide for the material needs of the children; (5) that reasonable efforts of the department have failed, and (6) that there was a lack of effort to meet the needs of the children in accordance with agreements with the department. Parental rights were then terminated and permanent legal custody of the children was placed with the department with authority to place them for adoption.
The mother contends that the trial court erred in terminating parental rights because, she claims, complaints of lack of visitation are based on untrue reports of the cousin. In further support for her contention, the mother claims that, although she and the father have lived in a number of places, they have always had a place to live and that she has received family options services and that the family options worker stated that there was no neglect of the youngest child, who remains with the mother and who is not the subject of this action.
However, we find that there is clear and convincing evidence that termination of parental rights is in the children’s best interests and that the trial court did not err. Clearly, the children have been in the care of others for the great majority of their lives. We agree with the trial court’s orders concerning B.L.F. and M.L.F., Jr., wherein it states that “the mother and father alleged that [the cousin] is attempting to or plans to adopt the child[ren] and that her intention to so adopt the child[ren] has influenced her testimony and interfered with their ability to visit with the child[ren]. The Referee finds that even if said allegation has any merit, the actions of the parents demonstrate a total lack of parental responsibility toward th[ese] ehild[ren].” The evidence indicates that not only have the children been consistent *495 ly left in the care of others, but also that the mother and the father have provided no support for them, that they have not maintained adequate and stable housing that would enable them to keep the children, and that there has been continual concern regarding adequate medical care for the children.
The father, in his appeal, contends that the trial court erred by not determining whether there were viable, less drastic alternatives to termination of his parental rights. He further contends that the trial court’s findings should have addressed the possibility of placing the children with the paternal grandmother or other nearby relatives.
The paternal grandmother testified that she would be willing to take temporary custody of the children and to assist the mother and the father with their care. However, she also testified that she lives in a one-bedroom apartment where the father presently sleeps on the sofa and that she wants to buy a three-bedroom trailer. She works at a pancake house from five o’clock in the evening to four o’clock in the morning and sleeps during the day. She did not visit with the children for the two years prior to the hearing. In addition, there was testimony that she did not cooperate with getting a home study done.
Regarding other relatives, the caseworker testified that she had spoken to all the relatives at one time or another, but that none had offered to take the children.
We find that there is clear and convincing evidence that there was no viable alternative to termination of the mother’s and the father’s parental rights. Although we appreciate the arguments of the mother and the father that they plan to improve their circumstances, there comes a point in time at which the children’s need for stability and continuity in their lives becomes paramount. The mother and the father have not demonstrated that they will be able to provide this in the foreseeable future.
Based on the above, this case is affirmed.
AFFIRMED.
All the Judges concur.