On December 17, 1991, the Bessemer Division of the Jefferson County Department of Human Resources (department) filed a petition to terminate the parental rights of F.L.L. (mother), B.L. (legal father), and J.S. (natural father) to Z.C.L. (child), who had previously been found to be dependent. After an ore tenus proceeding, the trial court found that the termination of parental rights is the least drastic alternative and that it is in the child's best interest that all parental rights be terminated. It ordered that the permanent care, custody, and control of the child be awarded to the department for the purpose of adoption. The trial court denied the mother's motion for a new trial. The mother appeals. We affirm. *Page 502 
At the outset we note that when evidence is presented ore tenus in a termination of parental rights proceeding, the trial court's judgment will be afforded every favorable presumption and will be disturbed on appeal only on a showing of palpable error. M.K.L.F. v. State Department of HumanResources, 588 So.2d 491 (Ala.Civ.App. 1991);Hudgins v. State, 418 So.2d 913 (Ala.Civ.App. 1982). It has also been determined that such a termination requires clear and convincing evidence that termination would be in the child's best interests. Muffoletto v. State Department ofHuman Resources, 537 So.2d 939 (Ala.Civ.App. 1988).
Additionally, this court must apply a two-pronged test where termination is sought by the state. Ex parte Beasley,564 So.2d 950 (Ala. 1990). First, the trial court must find the child to be dependent, and it then must determine that all viable alternatives to termination have been considered,Muffoletto, 537 So.2d 939, and rejected.Beasley, 564 So.2d 950.
The record reveals that the mother became addicted to Valium after her first husband died from an overdose of Valium. She had five children at that time. Two of the five children presently live with relatives, and the mother's parental rights to the other three children have been terminated. The mother was addicted to drugs when the child was born on November 13, 1990, and on January 28, 1992, she entered a drug treatment program, in which she stayed for three months. She had previously been scheduled to attend other treatment programs, which she did not attend. She now attends meetings every night.
A criminal charge for the possession of drugs is presently pending against the mother. The legal father was in prison at the time that the child was born, and he and the mother were divorced about a month before the hearing.
The child was removed from the mother's care on December 6, 1990, approximately three and one-half weeks after he was born. The mother has visited with the child only once, approximately eight weeks after he was born. She testified that she had been unable to care for the child because she was addicted to drugs and did not care about anything. In September 1991 the trial court ordered the mother to submit to urine testing once a week and to attend counseling and parenting classes. She did not comply with these orders.
The mother has not worked for approximately five years and has not contributed any support for the child. She has lived with friends in seven or eight different places since the child was born; however, she had lived in an apartment for three weeks prior to the hearing. She was receiving food stamps and was applying for jobs. At the hearing the mother admitted that she was still unable to care for the child, but she hoped to have a job and to be able to provide for the child in about three months. She stated that she had cared for her oldest child for nine years before she became addicted and that she had been a good mother then. She further testified that she did not have any relatives that could provide for the child.
A social worker with the department testified that she worked with both the mother and the child. She stated that she attempted to get the mother to seek prenatal counseling, to go to counseling for herself, and to make housing plans for the baby; however, the mother did not follow through with any of the recommendations. She further testified that after the birth of the baby, she attempted to get the mother to keep appointments to discuss what the mother needed to do in order to resume custody, but the mother did not keep appointments; she discussed with the mother the possibility of rehabilitation and of relative resources for placement; she was unable to locate the mother and did not hear from her for approximately a year; and when she was able to locate the mother and call her to a scheduled hearing, the mother did not attend.
The social worker further testified as follows: that the child, approximately eighteen months old, had not bonded with the mother and had no contact with her; that, in her opinion, termination was the best alternative and that the child was adoptable; *Page 503 
and that, since completing the drug treatment program, the mother still had not complied with requests made to her, which included requests for appointments, a request for the mother's address, and a request that the mother enter counseling and undergo a "psychological."
The mother contends that termination was not the proper remedy in view of the statutory requirement that the trial court consider whether "such conduct or condition is unlikely to change in the foreseeable future." Ala. Code 1975, §26-18-7(a), part of the Alabama Uniform Child Protection Act (Act). Section 26-18-7(a) provides as follows:
 "If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents."
The section then provides a list of factors which the trial court may consider in determining whether the parents are unable or unwilling to discharge their responsibilities to and for the child, and additional factors to use when the child is not in the physical custody of its parents. See §26-18-7(a)(1)-(6) and (b).
The evidence clearly indicates that the parents were unable or unwilling to discharge their responsibilities to and for the child and that the condition of the mother rendered her unable to properly care for the child. The mother was unable to care for the needs of the child, and reasonable efforts of the department were to no avail. In addition, regular visits were not maintained with the child; the mother did not maintain consistent contact or communication with the child; and there was a lack of effort by the mother to adjust her circumstances to meet the needs of the child.
Although the mother asks that physical custody be continued with the department so that she can work toward resuming her parental responsibilities, the evidence revealed that the mother continues to exhibit a lack of effort to meet the requests of the department in its attempts to help her. She has not worked in five years; she has criminal charges pending against her; and she has been out of a drug rehabilitation program for a brief period of time. The child's guardian ad litem in his brief succinctly summarized the situation as follows:
 "It would be the guardian's position herein that the [mother] has had ample opportunity to attempt to rehabilitate herself. Here the mother has had no contact with the minor child for approximately sixteen months and has initiated no contact. She has provided no support for the minor child. She admits to using narcotics to such an extent that she did not care about anything or anyone. She also indicated at the hearing that at the present time she would be unable to actually care for the child until some future time. . . .
". . . .
 "It would be the guardian's position that at some point in time, the child has got to be given the opportunity for a normal life. The [mother] requests that the child's life be put on hold so that she can make some belated effort to attempt to straighten out her life in an effort to regain custody of the minor child. Such action on the part of the [mother] is speculative at best, especially in light of her past conduct. . . . It would be the guardian's position that the [mother] has done utterly nothing to demonstrate any feelings for the minor child."
The trial court did not find that the conduct or condition of the mother was likely to change in the near future. Applying a favorable presumption to the trial court's judgment, we find that there was clear and convincing evidence that termination was in the best interests of the child and that all viable alternatives to termination were considered *Page 504 
and rejected. The judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.