THOMPSON, Judge.
J.D.W. (“the child”) was placed in the custody of the Houston County Department of Human Resources (“DHR”) by a July 5, 2001, order of the trial court shortly after she was born on June 27, 2001. Following a hearing on November 20, 2001, the trial court determined that the child was dependent. On May 16, 2002, DHR filed a petition seeking to terminate the parental rights of J.W. (“the father”) and K.W. (“the mother”) to the child. The petition indicated that the whereabouts of the mother was unknown. DHR filed an affidavit in support of serving notice on the mother by publication, and notice of the petition was subsequently published in the Dothan Eagle on May 19, May 26, June 2, and June 9. On August 13, 2002, the trial court conducted a hearing in which it received ore tenus evidence. The father was present and was represented by counsel at the hearing. The mother was not present at the hearing, but she was represented by her court-appointed counsel.[1] On August 27, 2002, the trial court entered an order terminating the father’s and the mother’s parental rights to the child. The father appealed. The record indicates that the mother filed a notice of appeal on September 5, 2002, but failed to file a brief on appeal in this court. Therefore, we affirm the trial court’s order insofar as it terminates the mother’s parental rights.
The record reveals that both the father and the mother suffer from schizophrenia and from mild mental retardation. The father and the mother both receive Social Security disability benefits. The father has been committed to the state mental-health system at least twice, and the mother has been previously committed to four separate mental-health facilities. When the child was born, the father was 50 years old and the mother was 22 years old. After the child was born, the staff at the *541 hospital where the child was born attempted to teach the father and the mother parenting skills, but both had difficulty performing basic tasks such as feeding and bathing the child. A hospital social worker telephoned DHR and requested an assessment of the father and the mother. DHR filed a petition for dependency, and the child was subsequently removed from the hospital and placed in foster care. The father visited the child every week following her removal from the parents’ care. However, the mother did not visit the child while she was in foster care.
Dr. Barry Funkhouser, a clinical psychologist, testified that the father was a regular patient of his and that he had seen the father 28 times since July 20, 2001. The father was initially referred to Dr. Funkhouser by DHR in order to help the father improve his parenting skills so that he could properly parent the child. Dr. Funkhouser initially met with the father after the father had threatened to commit suicide by taking an overdose of medication. Dr. Funkhouser noted that when he began his treatment, the father was not compliant with his prescribed medications for schizophrenia but that during treatment he became compliant. Dr. Funk-houser testified that the father was easily angered and was agitated when things did not go his way. In addition, Dr. Funk-houser testified that the father’s moods were unstable.
Dr. Funkhouser diagnosed the father with schizophrenia and mild mental retardation. Dr. Funkhouser stated that schizophrenia was a permanent condition. Because the father would always suffer from schizophrenia, Dr. Funkhouser determined that the father could not be the sole parent of the child. Dr. Funkhouser acknowledged that the father loved the child dearly; however, Dr. Funkhouser stated that love could not outweigh the problems the father would have with the day-to-day care of the child.
The father testified that he was disabled and that because of his disability he was currently unemployed; the last time he worked was in 1977. The father became physically disabled when he was working on a construction site and a steel beam fell on him. The father testified that as a result of his injury he now has only one kidney and a “bad liver.” The father currently receives $554 in Social Security disability benefits and is unable to pay child support from that income. The father testified that he has another child, by a woman other than the mother, who was 9 years old at the time of the termination hearing. That child receives $875 in Social Security benefits as a result of the father’s disability; however, the father has yet to apply for Social Security benefits for the child at issue in this appeal.
Cynthia Hobdy, a social worker with DHR, testified that she had never met the mother but that the mother had contacted her once. Hobdy testified that the mother had asked her about getting the child back. Hobdy also testified that the mother stated that she was living with her mother, A.L., and that A.L. would help her care for the child; however, A.L. is also mentally unstable. The mother did not leave a contact address when she spoke with Hobdy. Hobdy noted that, at the time of trial, neither the mother nor any of her immediate family had come forward to file a petition for custody. Hobdy had had no other contact with the mother.
Hobdy testified that the father generally became agitated when the child cried excessively. On the occasions the father visited the child while the child was in DHR’s custody, the father required assistance taking care of the child. Hobdy testified that a visitation specialist from DHR would ensure that the time the father *542 spent with the child was meaningful, productive, and safe. According to Hobdy, DHR and the individualized-service-plan team decided that the permanent plan for the child should be adoption. Hobdy testified that she knew of a family who wished to adopt the child following the termination proceeding.
On appeal, the father contends that the trial court erred in terminating his parental rights and that the termination of his parental rights was premature. A trial court’s determination of factual issues following the presentation of ore tenus evidence is presumed correct and will not be disturbed on appeal absent a showing of palpable error. F.L.L. v. State Dep’t of Human Res., 612 So.2d 501 (Ala.Civ.App.1992). Section 26-18-7, Ala. Code 1975, sets forth the statutory authority for the termination of a parent’s parental rights, providing, in pertinent part:
“(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
“(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for the needs of the child.
“(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
“(4) Conviction of and imprisonment for a felony.
“(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
“(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
“(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
[[Image here]]
“(8) That parental rights to a sibling of the child have been involuntarily terminated.
“(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of *543 its support, where the parent is able to do so.
“(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
“(3) Failure by the parents to maintain consistent contact or communication with the child.
“(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
(Emphasis added.)
This court has stated:
“Every parent has a prima facie right to custody of his or her child and that right can only be overcome by a showing of clear and convincing evidence that removing the child from the parent’s custody would be in the best interests of the child. M.H.S. v. State Dep’t of Human Resources, 686 So.2d 419 (Ala.Civ.App.1994).
“ ‘The trial court is given the authority to terminate parental rights if it finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the children. § 26-18-7, Ala.Code 1975. The trial court shall consider whether the parents have abandoned their children, whether the parents have problems with drugs or alcohol, and whether reasonable efforts to rehabilitate the parents have failed. § 26-18-7(a), Ala.Code 1975. If the children are not in the physical custody of their parent or parents, the trial court shall also consider such circumstances as whether the parents have provided material needs for the children, whether the parents have maintained regular, scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. § 26 — 18—7(b), Ala.Code 1975.’
“M.H.S. v. State Dep’t of Human Resources, 686 So.2d at 421.
“Where a nonparent petitions to terminate a parent’s parental rights, the trial court must apply a two-pronged test. Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990). The trial court must first determine that the child is dependent. Id. After finding the child dependent, the court must examine viable alternatives to the termination of parental rights. Id. On appeal, the trial court’s determination is presumed to be correct, and it will not be reversed absent a showing that the decision is so unsupported by the evidence as to be plainly and palpably wrong. M.H.S. v. State Dep’t of Human Resources, supra. In a proceeding to terminate parental rights, the paramount consideration of the trial court, and of this court, is the best interests of the children involved. Id.”
A.R.E. v. E.S.W., 702 So.2d 138, 139-40 (Ala.Civ.App.1997).
The record indicates that the father suffers from schizophrenia and mild mental retardation. The father’s schizophrenia is a permanent condition. Because of his condition, the father becomes easily agitated and angered. The father is dependent on medication to control his schizophrenia. As a result of an on-the-job injury, the father is disabled and has limited finances with which to care for the child. Although *544 the father regularly visited the child after DHR removed her from the hospital, the visits were monitored by a DHR employee to ensure the safety of the child. Hobdy testified that during those visits the father was not capable of caring for the child alone. In addition, Dr. Funkhouser testified that the father continued to experience periods of instability and uncontrolled anger. Dr. Funkhouser also testified that the father could never be the sole parent of the child.
The mother also suffers from schizophrenia. She is disabled and receives Social Security benefits. During the course of the proceedings with DHR, the mother failed to show for the dependency hearing or the termination-of-rights hearing. It appears from the record that the mother did not visit the child after DHR removed the child from the hospital. The mother telephoned Hobdy only once to ask about gaining custody of the child. Hobdy had no other contact with the mother.
The father contends that the trial court prematurely terminated his parental rights. In support of his contention, the father argues that DHR made no effort to rehabilitate him before terminating his parental rights. In addition, the father argues that his mental condition has improved and that he is now compliant with his medication. Contrary to the father’s assertion on appeal, DHR referred the father to Dr. Funkhouser in an attempt to help the father improve so that he could be a parent to the child. Following 28 visits with the father, Dr. Funkhouser was of the opinion that the father could never be the sole parent. There was no testimony or evidence to indicate that the father had any immediate family members who could help him care for the child. In addition, the record reveals that the mother is missing and that no one from her immediate family has come forward to petition for custody of the child. Given the evidence in the record on appeal, this court cannot say that the trial court’s termination of the father’s parental rights was plainly and palpably wrong. See A.R.E. v. E.S.W., supra.
AFFIRMED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.

. The record indicates that the mother also did not attend the November 20, 2001, dependency hearing.